IN THE CIRCUIT COURT OF THE CITY OF ST. LOUIS
STATE OF MISSOURI
Michael K. Mullen, Circuit Judge

**ANTHONY HALINSKI, et al.,**      )
                                       )
              Plaintiffs,   )
                                         )
              vs.      )   Cause No. 1622-CC00366
                                       )
                                       )    Division No. 16
                                       )
**COOK GROUP, INC. et al.**      )
                                       )
             Defendants. )

**KENYON ALLEN COLLINS et al..,** )
                                         )
             Plaintiffs,   )
                                         )
              vs.      )   Cause No. 1622-CC00337
                                       )
                                       )    Division No. 16
                                       )
**COOK GROUP, INC. et al.**      )
                                       )
             Defendants. )

**MOTION HEARING**

December 15, 2016

**FOR THE PLAINTIFF:**
**MARK NIEMEYER & MICHAEL KRUSE**

**FOR THE DEFENDANT:**
**JIM CHILDRESS, JAMES BOYERS & JOHN TANNER**

LAURIE A. BENNETT, C.C.R. 407
Official Court Reporter
22nd Judicial Circuit
St. Louis, Missouri

EXHIBIT 3

1          **THE COURT:**  So 1622-CC00366 styled Anthony

2      Halinski versus Cook Group, Incorporated among other

3      plaintiffs and other defendants.  We are here today to

4      take up several motions filed on behalf of the defendant:

5      A Motion to Dismiss for lack of personal jurisdiction, a

6      Motion to Sever the cases, and a Motion for a Protective

7      Order -- or a Motion to Compel certain discovery.  Mr.

8      Childress is here along with Mr. Tanner and Mr. --

9          **MR. BOYERS:**  Boyers.

10          **THE COURT:**  -- Boyers for the defendants in this

11      matter.  Mr. Kruse is here and Mr. Niemeyer are here on

12      behalf of the plaintiffs in this matter.

13          So, Mr. Childress, we'll look to you first.

14          **MR. CHILDRESS:**  Thank you, Your Honor.  We had our

15      first part of the hearing on that Motion to Compel last

16      week, took the cue.

17          **THE COURT:**  I recall.

18          **MR. CHILDRESS:**  And had more than a more few

19      discussions which resulted in a resolution of the

20      remaining discovery dispute.

21          **THE COURT:**  Very good.

22          **MR. CHILDRESS:**  And I thought it would be

23      appropriate to just very briefly put it on the record.

24          **THE COURT:**  Good idea.

25          **MR. CHILDRESS:**  So we all understand.  We had

EXHIBIT 3

1      filed written discovery directed to the plaintiffs, and

2      we ultimately requested from the plaintiffs a very

3      limited set of information in exchange for us withdrawing

4      our written discovery.  They have complied already and

5      supplied us, I think, with all the information we

6      requested.

7              **MR. NIEMEYER:**  Yes, sir.

8              **MR. CHILDRESS:**  And so on the record -- we've

9      agreed to it now on the record we'll take down our

10     written discovery for the time being.

11             **THE COURT:**  Mr. Niemeyer, you agree with that?

12             **MR. NIEMEYER:**  I do, Your Honor.  A couple

13     things -- and I apologize for not paying attention at the

14     very beginning.  There are two separate cases.  Did you

15     start us out on both of them, Your Honor?

16             **THE COURT:**  I probably did not.

17             **MR. NIEMEYER:**  And I don't know -- they're not

18     consolidated or anything like that.  But we're here on

19     both of them.

20             **THE COURT:**  I have 1622-CC00337 as well.

21             **MR. NIEMEYER:**  Yes.  So Halinski is the lead

22     plaintiff on the one, and Collins is the lead plaintiff

23     on the other.  So we happen to have identical issues on

24     each of them.

25             **THE COURT:**  So in fact you were paying attention.

EXHIBIT 3

 1          **MR. NIEMEYER:**  Without even knowing it.

 2          So I would say this, Your Honor, just to recap:

 3     When we were last before you, you took up solely the

 4     issue of the depositions that had been noticed and

 5     subpoenaed in the case.  You ruled and gave us our

 6     protective order and denied their Motion to Compel.  So

 7     we view that issue as closed and those notices and

 8     subpoenaes are now dead -- or were dead back then.

 9          With respect to the rest of our motion, it

10     actually is twofold.  Our motion was for protective order

11     on this written discovery issue, and now they have

12     officially withdrawn, and that was our agreement and we

13     provided them some limited information.  So none of that

14     written discovery is pending.

15          The balance of our motion was for a scheduling

16     order.  And so that's the only part of the motion that

17     remains out there; although certainly I don't think that

18     any of us believe that is necessarily ripe for our

19     discussion with the Court today.  We'd like to table

20     that.  And just in discussions before we walked up here,

21     it's our position that, you know, these motions will be

22     argued today.  And then I don't know what time the Court

23     will need to decide.  I know the holidays are coming up

24     and all of that.  But we would like to make use of the

25     time between today and whenever those rulings are entered

EXHIBIT 3

1    to discuss the scheduling order, plaintiffs' fact sheet

2    and defense fact sheet.  It's certainly the defendant's

3    prerogative to say, hey, listen, you know, we want to

4    hear from the Court first, we don't want to do any of

5    that work.  It's the plaintiff's position that that's not

6    a productive way to approach this, you know, kind of

7    given what we believe the state of the law is in the

8    circuit.  So I only point that out to the Court to let

9    the Court know that's out there.  I don't know if the

10    Court would indulge us with encouragement either way

11    today, or we just make the Court aware of that and then

12    if we have an issue we come back to you.  But that gives

13    the full picture.

14        **MR. CHILDRESS:**  And we'd like a ruling I think

15    that -- go ahead, John.

16        **MR. TANNER:**  Sure, Your Honor.  First of all,

17    we'll be requesting the Court for a short period of time

18    like a week to submit some required briefs on the Motion

19    to Dimsiss and the Motion to Sever only because we were

20    served late yesterday with their papers, and then a few

21    comments.  I promise, Your Honor, they'll be short.

22        **THE COURT:**  Okay.

23        **MR. TANNER:**  It won't be expansive, but that's a

24    week built into there we'd like to be considered.

25        Second, we do think the issue of severance and

EXHIBIT 3

1    dismissal are important and are important because they

2    really affect the scheduling.  Although, we're not going

3    to not pick up the phone and going to be rude in any way,

4    but we think productive discussions can happen after Your

5    Honor rules on the Motion to Dismiss and the Motion to

6    Sever.

7           **THE COURT:**  So how's that for an answer,

8    Mr. Niemeyer?  They need a week to respond, so that week

9    is not going to count, and then they won't not answer

10   your phone call.

11          **MR. NIEMEYER:**  It was the tail end of that that

12   made me nervous, Your Honor, where he mentioned that he

13   thought that productive conversations could only occurr

14   after the rulings.  And so we of course would like to

15   have productuve conversations while the rulings are

16   pending.

17          **THE COURT:**  I think you should try to have

18   productive conversations while we're awaiting the ruling.

19   And when the ruling comes out -- I'll get it out as fast

20   as I can -- which will hopefully allow you to have more

21   productive conversations after the ruling.

22          **MR. NIEMEYER:**  Thank you, Your Honor.

23          **THE COURT:**  All right.  So who's going to take the

24   next part.

25          **MR. BOYERS:**  Your Honor, this is Jim Boyers on

EXHIBIT 3

1    behalf of the Cook defendants, and I will be arguing the

2    Motion to Dismiss.

3              **THE COURT:**  Okay.

4          **MR. BOYERS:**  So, Your Honor, as Mr. Niemeyer

5    noted, there are two cases here:  Halinski and Collins.

6    I wanted to provide a little bit of background before

7    discussing the merits of our Motion to Dismiss.  In

8    Halinski there are 80 plaintiffs, only five of whom are

9    from Missouri.  In Collins there is 62 plaintiffs, only

10   three of whom are from Missouri.  In Halinski there are

11   two from Indiana and one from Indiana (sic).  The others

12   make up, I think, a total of 28 states.  So there are

13   plaintiffs from all over the country who have been

14   brought into these two cases.

15         We file our Motion to Dismiss based on a lack of

16   personal jurisdiction as to the non Missouri plaintiffs

17   because there is simply a lack of general jurisdiction as

18   to Cook, general personal jurisdiction.  The plaintiffs

19   agree with that.  They've conceded that they don't have

20   general personal jurisdiction against Cook.  And in light

21   of the Daimler v. Bauman case that we cited in our papers

22   from the United States Supreme Court, they couldn't make

23   that argument, because Missouri is not a home to Cook.

24   And the allegations in the complaints demonstrate the

25   principal place of business for the Cook entities in this

EXHIBIT 3

1    litigation are either Indiana or Bjaeverskov, Denmark.

2    So there is no potential general jurisdiction against

3    Cook here in Missouri as to any of the plaintiffs.

4         Daimler makes clear that just by doing business in

5    the state you don't open yourself up to general

6    jurisdiction.  And that's an important point to consider

7    as we move on to the discussion as to the out-of-state

8    plaintiffs in their claims, their causes of actions

9    against the Cook defendants.

10        Now, there has been a suggestion that just by

11   having a registered agent as they say Cook Medical has,

12   that's enough to consent to jurisdiction.  In light of

13   the ruling in Daimler that just simply doing business in

14   the state is not enough to establish personal

15   jurisdiction, we think that argument must fail under the

16   constitutional framework set out in Daimler.

17        So as we think about what jurisdiction could the

18   out-of-state plaintiffs possibly have, well, they have to

19   make an argument for specific jurisdiction, except they

20   don't make that argument.  They don't argue that there is

21   specific jurisdiction as to any of the individual

22   out-of-state plaintiffs.  Not one of them alleges in the

23   amended complaints in either Halinski or Collins that

24   anything was done in Missouri that relates to their cause

25   of action against Cook.  In the 14th Amendment requires

EXHIBIT 3

1    for specific personal jurisdiction that there has to be

2    some connection to the cause of action and the defendant.

3    Here with respect to those plaintiffs there is none.

4        The 8th Circuit has listed five factors in looking

5    at specific personal jurisdiction.  The nature and

6    quality of the contacts, the quantity of the contacts of

7    the defendant to the jurisdiction, and most importantly

8    the relation of the claim to the contacts.  There are no

9    contacts by Cook to this jurisdiction, Missouri, related

10   to the out-of-state plaintiffs.  And so looking at the

11   fourth factor that the 8th circuit laid out is that

12   out-of-state plaintiffs can't create an interest in the

13   forum state in the litigation, And Missouri certainly is

14   not a convenient location for the out-of-state plaintiffs

15   or for Cook to litigate the allegations in the amended

16   petitions in Halinski and Collins.

17       The plaintiffs point to several cases to suggest

18   that the plaintiffs should be able to -- out-of-state

19   plaintiffs should be able to, in essence, bootstrap their

20   way into the litigation through joinder.  Mr. Tanner will

21   argue the Motion to Sever.  But with respect to the

22   bootstrapping, we would direct the Court to the Level 3

23   case that's cited in our papers.  There is some important

24   language there and the Court knows it is well established

25   that the requirement for personal jurisdiction cannot be

EXHIBIT 3

1    bypassed by proving proper joinder.  If the law were as

2    the plaintiffs state, then for a defendant to be subject

3    to specific jurisdiction on one claim by one plaintiff

4    would suddenly make him vulnerable to general

5    jurisdiction as to all parties who arguably have claims

6    arising out of the same transaction or occurrence.  The

7    Court knows this would unfairly allow plaintiffs to

8    bypass the requirements of personal jurisdiction, the

9    requirements that are set forth by the 14th Amendment.

10    Here the plaintiffs in their arguments make no

11    attempt to suggest that any one of the out-of-state

12    plaintiffs can establish specific personal jurisdiction

13    as to the Cook defendants.  They don't make that

14    argument.  They suggest exactly what the Court here in

15    Level 3 says is inappropriate, that joinder allows you to

16    get around the requirements of the 14th Amendment.  That

17    simply can't be true under the law set forth in Daimler

18    and looking at Goodyear, which is also cited in our

19    papers.

20    Another case that's of note is the Affordable

21    Healthcare case, the Protus IP Solution cited in our

22    papers.  In that case the non-Missouri resident

23    plaintiffs were dismissed from the case for lack of

24    personal jurisdiction.  Again, this is a multi-plaintiff

25    case where the non -- the out-of-state complainants had

EXHIBIT 3

1    no connection to the jurisdiction nor did the defendant.

2    And so it wasn't -- the Court recognized that specific

3    personal jurisdiction wasn't there as to those

4    defendants.

5          Your Honor, there are a couple of cases the

6    plaintiffs rely upon:  The Kmart case v. Holliger, which

7    is from the Supreme Court of Missouri, now this case

8    doesn't support establishing that personal jurisdiction

9    exists here with respect to the Cook defendants.  In that

10   case the defendant did not make any argument that there

11   was a 14th Amendment issue with respect to personal

12   jurisdiction, so that issue wasn't addressed in the Kmart

13   case.

14         In the Hustler case that they cite you from the

15   U.S. Supreme Court, in that case it was a different kind

16   of complaint.  It was libel.  And the remedy sought by

17   the plaintiff was to recover for all damages in every

18   state caused by that libel.  So there was a relationship

19   in that case for that plaintiff who was not from the

20   forum jurisdiction to the forum because they were injured

21   by the libel claim within the state where they chose to

22   sue.  It's a different situation than here.  There is no

23   connection to the alleged injuries against the

24   out-of-state plaintiffs to Missouri.  And under the

25   Supreme Court's 14th Amendment framework and under many

EXHIBIT 3

1 cases that we have referred to in our papers including

2 Keeley and several others from the Eastern District,

3 personal jurisdiction can't just be avoided through

4 joinder.  You've got to establish it for each plaintiff

5 in order to satisfy the requirements of the 14th

6 Amendment.  And for that reason, Your Honor, we move that

7 the claims made by the out-of-state plaintiffs be

8 dismissed for lack of personal jurisdiction.

9   **THE COURT:**  So do you want to take that up now,

10 Mr. Kruse, or do you want to go right into the joinder

11 and into the severance and argue both at the same time?

12   **MR. KRUSE:**  Judge, it's certainly the Court's

13 prerogative.  I personally prefer to allow them to make

14 their joinder argument and I can respond to both.

15   **THE COURT:**  That's fine.  We may as well.  That

16 way your one side goes, and then you can respond.

17   **MR. TANNER:**  Whatever you think, Your Honor

18   **THE COURT:**  That's fine.

19   **MR. TANNER:**  Okay.  Great.  Yeah, I'm here to talk

20 about the misjoinder in this case designated as a Motion

21 to Sever.  As Mr. Boyers mentioned here, we have two

22 cases here, one with 62 plaintiffs, 59 of them have no

23 connection whatsoever to the State of Missouri.  It's 95

24 percent.  The other case we have 80 plaintiffs, only five

25 of them have any connection to Missouri.  You got 94

EXHIBIT 3

 1    percent of the people in that case have no connection

 2    whatsoever to Missouri.  We think this Court has two

 3    options to rectify that situation.  One is the dismissal

 4    due to lack of personal jurisdiction, both general

 5    jurisdiction or Bauman and the fact that in specific

 6    jurisdiction which they don't seem to even argue.  The

 7    second is this joinder issue, Your Honor, and the

 8    impermissible nature by which these cases have been

 9    joined under the rule.  The only basis -- the only basis

10    they have to join all of these cases together, the

11    Halinski cases together and the Collins cases together,

12    Your Honor, is that it involves the same type of product.

13         The case law out there, however, is as the Rule

14    52.05 in a medical device case that is not enough.  It's

15    not enough under the law.  It's not enough because it

16    creates prejudice to the defendant, and it also creates a

17    nightmare for this Court to handle that type of situation

18    where you have this misjoinder of 95 percent of the

19    cases.

20         If I could briefly talk just a minute about the

21    law.  We all know 52.05, the requirements arising out of

22    the same transaction occurrence or occurrence and a

23    common question of law and fact, basically the same as

24    Rule 20 under the Federal rules.  It's not a

25    discretionary order that this Court can enter.  It has to

EXHIBIT 3

1    be entered as a matter of law.  And the case law, we

2    would submit, strongly support this case should be

3    severed.  We cited several cases, the Cumba v. Merck

4    case, different people, different medical histories,

5    different circumstances, we've cited in our papers.  And

6    in that case, Your Honor, I'll just read briefly, it

7    says, The majority of Courts to address the joinder in a

8    context -- in that case of a drug liability case -- have

9    found that basing joinder merely on the fact that

10   plaintiff injested the same drug, sustained the same

11   injuries is insufficient to satisfy Rule 20 same

12   transaction requirement, which is the same as Missouri's

13   requirement.  It appears, for example, that the only

14   unifying factors among the personal injury plaintiff lie

15   in the allegation that each took the drug Vytorin and

16   that each sustained broadly similar injuries as a result

17   thereof.  As defendants correctly point out, however, the

18   personal injury plaintiffs nonetheless are different

19   people with different medical histories who separately

20   took a drug prescribed by different physicians under

21   different circumstances probably for different periods of

22   time, and at different points of times joinder is not

23   proper.

24       We've cited other cases, Your Honor, which conform

25   to that, the Wyeth case, et cetera.  Even there you had the

EXHIBIT 3

1    same defendant, same drug; not sufficient.  That's the state
2    of the law.

3           The plaintiffs have cited the Barron case.  It's a
4    case decided in the Court of Appeals in Missouri very
5    recently.  It was an anti-epileptic drug, involved 24
6    plaintiffs, and in that case the Court indeed found joinder
7    appropriate.  We think that case distinguishable.

8           **THE COURT:**  How so?

9           **MR. TANNER:**  It's a fringe case.  Four ways it's
10   distinguishable, Your Honor.

11          **THE COURT:**  Fire away.

12          **MR. TANNER:**  Number one, there were only 24
13   plaintiffs in that case versus 80 and 62.  We have three
14   times the number of plaintiffs here.  The number of
15   differing jurisdictions, the number of differing events
16   that happened, that's number one.

17          Number two, Your Honor, the product is
18   substantially different.  In that case you're talking
19   about a medicine.  A medicine -- and I don't know if it's
20   taken by a pill or by injection, but you have a medicine.
21   Here we have 24 different -- as I mentioned 80 different
22   plaintiffs, 80 different doctors, but the difference here
23   is this is a medical device, which each of these
24   plaintiffs, it's a different surgery, Your Honor, a
25   different surgical technique as to how that particular

EXHIBIT 3

1    filter is put into each of the plaintiff's body.  You

2    don't even have a common method of ingestation of the

3    drug like you did in Barron.  Here you have 80 -- in

4    Halinski 80 different surgeries and in Collins 62

5    different surgeries.  We had 142 different surgeries

6    here, Your Honor, which makes those products

7    substantially different.

8         Third reason, the alleged problem with the product

9    is diverse here versus in that case, the Barron case, it

10   was a birth defect issue due to the anti-epileptic drug.

11   It created birth defects, or that was the allegation.

12   Here, plaintiff's own papers -- own papers show that we

13   have multiple different alleged injuries in these cases.

14   They allege the filter may have been imbedded.  Another

15   one may have tilted.  Another one may have my migrated.

16   Another one may have fractured.  Another one may have

17   perforated.  Different issues that you can not

18   consolidate -- or they cannot consolidate and try to put

19   them into one case under the law.

20        The fourth reason is the weight of authority.

21   That the vast weight of authority out there says

22   severance is proper and joinder is not proper in these

23   circumstances.  I read you some of the cases.  We have

24   Eastern District of Missouri case, the Hyatt case.  In

25   the present matter plaintiffs injuries did not arise out

EXHIBIT 3

1    of the same transaction or occurrence.  Each plaintiff

2    was injured at different times in different states

3    allegedly from their use of NuvaRing, which was the

4    product in that case, Your Honor.  That was presumably

5    prescribed by different healthcare providers.  Nor are

6    plaintiffs' injuries all the same.  As a result the

7    joinder of the claims of plaintiffs was a misjoinder of

8    the parties in this suit.

9         Another case, Your Honor, is the Pfizer case which

10   we cited.  In there they emphasize the fact that we're

11   dealing with different jurisdictions.  Here, Your Honor,

12   we've had 29 -- in the Halinski case alone, excuse me, we

13   have 29 different jurisdictions, different laws that

14   would apply.  And the court said in that case,

15   Essentially the only common factor in this case is the

16   drug, Chantix.  Furthermore, plaintiffs claims are not

17   based on the same statute or the same law.  Unlike the

18   plaintiffs in Mosely who were all raised under claims of

19   Title 7 or the plaintiffs in Boeing who all raised

20   Missouri state law claims, most if not all of the claims

21   plaintiff raise in their complaint would be based on

22   plaintiffs' respective states' laws.  Plaintiffs claims

23   will require separate legal analysis, and should this

24   case go to trial as captioned, the Court could imagine

25   that four separate trials would be necessary not only

EXHIBIT 3

```
 1        because the plaintiffs claims would be individualized,

 2        but because four sets of jury instructions would be

 3        required to encompass the laws of the four different

 4        states.  Very little economy if any at all would be

 5        realized should the claims remain joined.  And that's

 6        another Eastern District of Missouri case, Your Honor.

 7              So under the law the vast majority of the law says

 8        these are improperly joined.  We have a medical device,

 9        which is a totally different type of product with a

10        totally different type of injection of the product.  Here

11        we have several different surgeries, 142 different ones.

12        That means joinder under the law is appropriate.

13              We also have the issue of the prejudice to the

14        defendant and kind of the nightmare to the Court

15        scenario, if you will.  Again, we have 80 -- in Halinski

16        alone we have 80 different facts patterns.  If you add

17        Collins, that's 142 different fact patterns, different

18        doctors, different medical histories, different learned.

19        Intermediary doctrines that may apply, different

20        reliances on warnings, 29 different laws to apply.  We're

21        talking about different summary judgment standards --

22        excuse me, not standards, but summary judgment

23        determinations.  If these were to go to trial, you got a

24        situation where you're going to confuse the jury, have no

25        judicial economy.  We run the prejudice from an
```

EXHIBIT 3

```
 1        accumalitve effect of them saying, Well, look at all

 2        these plaintiffs that have had trouble.  In Halinski we

 3        have 80 plaintiffs that have had problems.  But we're

 4        forbidden from being in the hundreds of thousands of

 5        people that have had great success.  This is a product

 6        that has well over a 99 percent success of patients that

 7        this is an effective cure to their serious problem.  And

 8        how do we bring all those patients in?  There is an

 9        extraordinary pressure to us, Your Honor, that a juror

10        may look at one case and apply their views of that case

11        or that plaintiff to the other plaintiffs.  And that's

12        unfair and that's why we have permissive joinder rules.

13             Your Honor, we would submit that the 95 percent of

14        the plaintiffs that have nothing to do with this case

15        should not be in this case.  The plaintiffs only position

16        is that it's the same product.  That's not sufficient

17        under permissive joinder, and these cases should be

18        brought in their appropriate forums.  Thank you.

19             THE COURT:  Very good.  Mr. Kruse.

20             MR. KRUSE:  Thank you, Judge.  If it pleases the

21        Court, I'm going to respond to their motions in reverse

22        order if that's okay.  I'll respone to the Motion to

23        Sever first.

24             Judge, it is our belief as indicated in our papers

25        that these claims are properly joined.  All the
```

EXHIBIT 3

1    plaintiffs in both actions respectfully, all the

2    plaintiffs in the Halinski action, their claims all arise

3    out of the same serious transactions or occurrences.  And

4    all the plaintiffs in Collins action, their claims all

5    arise out of the same series of transactions or

6    occurrences.

7          Just so the Court understands the difference

8    between the cases, and they are indeed two different

9    cases.  One of the cases, the Halinski case involves a

10   product that is the Cook Celect IVC filter.  The Collins

11   case involves a similar yet sightly different product

12   known as the Cook Gunther Tulip filter.

13         All the plaintiffs in the Halinski action received

14   a Cook Celect IVC filter suffer an injury thereby as a

15   result of what we allege is the same design defect from

16   the product.  Likewise, in Collins, all the plaintiffs

17   received a Cook Gunther Tulip IVC filter and suffered a

18   related injury as a result of the same alleged defective

19   design of the product.

20         Missouri has long recognized the propriety of

21   joinder, the benefits of joinder and it's employed a

22   liberal standard much like the Federal courts have as to

23   what constitutes arising out of the same series of

24   transactions or occurrences.  Generally, it focuses on

25   whether or not the cases joined together involve common

EXHIBIT 3

1    questions of law and fact.  We recently received a

2    guidance from the Missouri Court of Appeals in the Barron

3    versus Abbott laboratory's case, which was the

4    multi-plaintiff Depakote case that arose out of this very

5    court.

6        Despite defendant's assertions to the contrary, I

7    believe the two cases currently before the Court are

8    exactly in line with the situation that was before the

9    Court of Appeals in the Depakote case.  What the Court

10    pointed out in that case and is important to the matter

11    before the Court presently are all the differences the

12    defendants focus on, the Missouri Court of Appeals

13    basically said doesn't matter.  The Court of Appeals made

14    clear that the exact injuries or the mechanism of injury

15    does not have be to identical amongst all the plaintiffs.

16    What the court is focused is whether collections of law

17    or fact are going to arise across all the claims.

18        The court in the Depakote case looked at the

19    conduct that was at issue in all the claims before it,

20    and essentially the same conduct that is before the Court

21    in our cases.  The three major things that the Court of

22    Appeals drew attention to were the fact that all of these

23    claims were going to involve questions of what did the

24    defendants know about their product, what did the

25    defendants disclose about their product, what were they

EXHIBIT 3

1       required to disclose about their product.  Those are the

2       exact issues that are pled in the two complaints before

3       the Court.

4               All of the plaintiffs in our case are alleging

5       injuries.  While the defendants try to focus on the

6       differences between those injuries, for our purposes and

7       the purpose of joinder, those differences are illusory.

8       All the injuries arise out of the same design defect or

9       the fact that the product is designed effectively, both

10      in construction and how it's placed in the body.  The

11      same -- it's going to involve many of the questions.  All

12      the questions don't have to be the same for joinder to be

13      proper and the claims to arise out of the same series of

14      transactions or occurrences.  As the Court of Appeals

15      stated in responding to very similar arguments the

16      defendants are raising now, they said, The fact that

17      Depakote was prescribed to the plaintiffs by different

18      physicians is not controlling on the question of joinder

19      nor are the claim differences in the Depakote induced

20      birth defects sustained by the plaintiffs in the issue

21      here.  The differing ages and home states of the

22      plaintiffs have no bearing on the commonality of their

23      claims or the relevant transaction by appellant.  I think

24      that's directly on point.  That's no different than the

25      two cases before the Court.

EXHIBIT 3

```
1          While the defendants try to draw distinction

2     between the fact that the product in this case is a

3     medical device as opposed to the anti-epileptic drug

4     Depakote, again, that just doesn't make sense.  Birth

5     defect cases -- and I'm familiar with birth defect

6     cases -- and including Depakote cases is just as if not

7     more complex than the matters currently before the Court.

8     The Depakote case before the Court of Appeals involved a

9     whole host of birth defects.  It wasn't one simple

10    defect.  And birth defects can happen a number of

11    different ways depending on the defect at issue and when

12    the drug was taken.  Birth defects develop at different

13    times while the fetus is in utero and under different

14    situations as far as exposure.  And the plaintiff

15    profiles would be far more important in a birth defect

16    case than they would in the present case.  Any time you

17    have a birth defect case, the mother's age, mother's

18    genetic background predisposition to certain diseases

19    would play a tremendous role in whether the birth defect

20    could potentially be related to the product or to the

21    specific plaintiff.  The Court of Appeals said all that

22    doesn't matter based on the common questions before it

23    which are the same common questions before the Court

24    presently.  Joinder was proper in that case and it should

25    be here.
```

EXHIBIT 3

1      The other issue that the defendants focus on is

2      the fact that the Barron case only involved 24 plaintiffs

3      as opposed to the number of plaintiffs before the Court

4      presently.  The Missouri Court of Appeals gave no

5      indication that that in any way, shape or form shaped its

6      opinion, and that 24 was the ceiling of cases it could be

7      presented with.  The Court of Appeals has received

8      petitions for writ of prohibition on these very cases for

9      years now and has denied all the writs of prohibition.

10     The Court of Appeals knew that was an issue in many of

11     the cases that had went to the Court of Appeals on a writ

12     basis involved up to 99 plaintiffs.  The Court of Appeals

13     knew there were a lot of cases out there that had more

14     than 24 plaintiffs.  I would offer to the Court that if

15     the Court of Appeals thought that was an important issue

16     in its judgment, it probably would have put at least in

17     dicta that that was something they were focused on.

18         Based on Barron we think it's clear that joinder

19     is proper here.  All these claims are sufficiently

20     layered as pointed out in our papers.

21         With regard to the personal jurisdiction issue,

22     it's our position that the defendants are focused on the

23     wrong matter.  I think Judge Moriarty pointed it out best

24     recently when she articulated in response to similar

25     arguments that personal jurisdiction is a defendant

EXHIBIT 3

1    centric inquiry.

2         **THE COURT:**  Is what?

3         **MR. KRUSE:**  Is a defendant centric inquiry. The

4    Court doesn't have to make a determination whether it has

5    personal jurisdiction over the plaintiffs.  The Court

6    acquires  personal jurisdiction over the plaintiffs when

7    they file suit.  They have consented to the jurisdiction

8    of the Court.  The analysis is based upon the defendant's

9    contacts with the forum state.

10         In the specific jurisdiction context, that is what

11   the Court is supposed to focus on.  The determination is

12   not whether the plaintiffs have any relationship to

13   Missouri, it's whether the defendants have a relationship

14   to Missouri, and whether the cause of action arises out

15   of that relationship with the State of Missouri.

16         In the present case in both cases there are

17   numerous Missouri plaintiffs.  The defendants do not

18   challenge personal jurisdiction as to those plaintiffs.

19   It's clear the defendants sold the products at issue here

20   in Missouri.  It's clear they marketed the products here

21   in Missouri.  They distributed the products here in

22   Missouri.  They injured plaintiffs here in Missouri.

23   This is one case.  Those contacts constitute transactions

24   in the State of Missouri and committing torts in the

25   State of Missouri.  They gave rise to these two cases as

EXHIBIT 3

1    a whole.  That is sufficient to satisfy due process in a

2    specific jurisdiction context and it's sufficient for the

3    Court to exercise personal jurisdiction over the

4    defendants for the case before it.

5         The defendants rely heavily on Judge Jackson's

6    opinion in the Level 3 communications case which I'm

7    quite familiar with.  The Level 3 Communications case I

8    would argue has no bearing on the present analysis.  The

9    Level 3 communications case was a case involving a

10   telephone communications dispute where personal

11   jurisdiction was determined based upon a consent to sue

12   agreement in that case.  Judge Jackson wasn't saying that

13   in a tort action involving personal injuries that arise

14   out of the defendant's contacts in the forum state, you

15   can't exercise personal jurisdiction or you have to make

16   that a separate determination as to each plaintiff.  In

17   that case it didn't arise out of the defendant's contacts

18   with the State of Missouri.  Judge Jackson herself

19   subsequently has issued several orders in these cases

20   including the Gracey case, which is referenced in our

21   papers where she specifically articulated the exact

22   principle plaintiffs are putting before the Court now;

23   that the jurisdictional analysis in this type of case is

24   determined based upon the defendant's contacts with the

25   forums state, Missouri, and the fact that this action as

EXHIBIT 3

1    a whole arises out of those contacts.  Judge Limbaugh has

2    also opined on the Level 3 case and he's also made clear

3    that has no bearing under the current scenario.

4        With regard to the consent jurisdiction argument,

5    there is one defendant in this case.  Cook Medical has a

6    registered agent in the State of Missouri.  We disagree

7    with defendant's assertion that Daimler played any role

8    in changing the analysis on consent jurisdiction.

9    Consent jurisdiction is one of the oldest bases for

10   establishing personal jurisdiction over a defendant.

11   It's separate and apart from the due process analysis.

12   It has nothing to do with general jurisdiction.  Daimler

13   was only addressing general jurisdiction.  Daimler in no

14   way overruled consent jurisdiction which has been around

15   for quite some time.  As we point out in our papers, the

16   Supreme Court does not overrule itself sub silentio, if

17   the Supreme Court chose to overrule consent jurisdiction

18   as a legitimate basis for achieving personal jurisdiction

19   over a defendant, they would have said so specifically.

20       In  sum, joinder is proper on these cases, they

21   all arise out of the same series of transactions or

22   occurrences.  They involve the same product, similar

23   injuries and the exact same conduct at issue for all

24   plaintiffs across the board.  Specific jurisdiction is

25   proper.  The cause of action as a whole arises out of

EXHIBIT 3

1    defendant's contacts with the State of Missouri, the

2    inquiry is Defendant CENTRIC, not plaintiff CENTRIC.

3         And finally, consent jurisdiction is proper for at

4    least Cook Medical LLC based on the fact that they have

5    consented to jurisdiction of Missouri Courts by having a

6    registered agent in the State of Missouri.

7         **THE COURT:**  Mr. Tanner, anything you want to

8    respond?

9         **MR. BOYERS:**  Just briefly, Your Honor.

10        While specif jurisdiction does focus on the

11   defendants, it's not divorced from the relationship of

12   the cause of action to the defendants.  And, Your Honor,

13   here, the out-of-state plaintiffs' claims, their causes

14   of action against the Cook defendants have no

15   relationship whatsoever to Missouri.  The case law -- the

16   significant case law from the Eastern District that makes

17   clear that you can't have personal jurisdiction without

18   having a connection of the cause of action to the

19   defendant's activities within the forum.  And with

20   respect, the fact that the L-3 litigation involved a

21   contract as opposed to a tort doesn't affect the

22   analysis, Your Honor.  The analysis has to be what does

23   the 14th Amendment of the U.S. Constitution require as to

24   establishing specific personal jurisdiction.  I don't

25   think -- and I didn't hear him argue -- that you can

EXHIBIT 3

1    establish specific personal jurisdiction against the Cook

2    defendants for any one of those out-of-state plaintiffs,

3    absent this joinder gets around this 14th amendment.

4    That isn't consistent with what the Supreme Court has set

5    forth in Daimler and the case law that we've cited in our

6    briefing.  Thank you.

7        **THE COURT:**  Mr. --

8        **MR. TANNER:**  Briefly, if I might.

9        On the Barron case counsel said all the

10    differences were addressed.  That's just not true.

11        **THE COURT:**  Say that again.

12        **MR. TANNER:**  He said all the differences that we

13    had highlighted were addressed in that case, and I said

14    that's simply not true.  One of the main differences here

15    is the surgical technique.  We have 80 different surgical

16    techniques, different surgeries that happened in

17    Halinski; 62 different ones that happened in Collins.

18    Those aren't addressed at all in Barron, because it's a

19    pharmaceutical drug, not a surgical procedure to implant

20    the device and the decisions that go into having an

21    operation to have those implanted.

22        In addition, we have different allegations by

23    plaintiffs about the issue with the product.  And what

24    ways, different ways it failed; whether it's perforation

25    or tilting and the others that I mentioned, Your Honor.

EXHIBIT 3

1    Very big differences between these cases.

2        The other area that I'd like to talk about and

3    hear from counsel is this idea of we have 80 plaintiffs

4    in Halinski, 62 in Collins, and how those are going to be

5    tried if they're not -- if they're not severed.  Because

6    in their papers they mention something about separate

7    trials.  I thought that's what I'd hear today, but I'm

8    trying to find out if they're planning to try these cases

9    together, or have separate trials.  Because that has an

10   impact on the severance motion.

11       **MR. KRUSE:**  And we would leave that to the

12   prerogative of the Court.  It's certainly an issue that

13   we could discuss with the defense.  As the Court is well

14   aware, the Court has within its powers and in Missouri

15   rules to allow joinder and to separate the cases for

16   trials as the Court sees fit.  We could try each case

17   individually.  The Court could try five cases at one time

18   or the Court could try all 80.  That's a question of

19   logistics for the Court as far as what it feels is most a

20   appropriate.  As the Court is aware and as they there

21   have been numerous trials in this Court regarding these

22   types of case, and the Court in the past has felt it

23   appropriate to separate the cases and try them

24   individually or break them down into groups.  We would

25   leave that to the Court's intelligence.

EXHIBIT 3

1          **MR. TANNER:**  So are you proposing that all 80 of

2     the Hallinski plaintiffs would be tried together, or

3     could be tried together?  Is that what you're suggesting?

4          **MR. KRUSE:**  The rule allows for them to be tried

5     together or to be tried separately depending on the

6     Court's prerogative and what it feels is most appropriate

7     under the circumstances.

8          **MR. TANNER:**  So first, are you saying --

9          **THE COURT:**  Address the Court.

10          **MR. TANNER:**  Sorry, I apologize, Your Honor.  I'm

11     wondering if they're going to stipulate that they won't

12     seek them to all be tried together, or we're facing their

13     idea of trying them altogether.

14          **THE COURT:**  Well, I think that's something you all

15     can talk about.

16          **MR. KRUSE:**  And I don't think that's something

17     that we need to stipulate to today.  For purposes of the

18     defense's position that they're going to be prejudiced or

19     this is undue hardship, the Court -- if the Court feels

20     that trying all 80 cases together would be inappropriate,

21     the Court has within its power to order separate trials.

22     It's also something that we could stipulate to in the

23     future if we have discussions on how the -- what we think

24     the best course of action is to progress the case.

25          **MR. TANNER:**  But here's why it matters, Your Honor

EXHIBIT 3

1        sorry, is you've already suggestion a case major plan

2        which has a Bellweather process, right?

3               **MR. KRUSE:**  Uh-huh.

4               **MR. TANNER:**   And we have the effect of which

5        cases you pick could have issue preclusion, claim

6        preclusion, that type of issue arguments in the future,

7        right, I mean you agree with that?

8               **MR. KRUSE:**  Potentially.

9               **MR. TANNER:**  Okay.  The point is if they're not

10       tried together, Your Honor, then we get the severance

11       motion, then they should be severed.  It's their own

12       opinion that says that.  It's an opinion that you wrote,

13       Your Honor in the Ward case.  The policy of the law is to

14       try all issues arising from the same transaction or

15       series of occurrences together.  So by them opposing --

16       that's the purpose of the rule on severance and joinder

17       as stated by Your Honor.  So what I'm saying is they

18       can't seem to have it both ways.  They can't say in one

19       breath, well, we might try these altogether or we might

20       try them separately.

21              If they're not going to try them together, then

22       the reason for the permissive joinder no longer exists

23       and the cases should be severed and go back to their own

24       jurisdiction.

25              **THE COURT:**  So are you saying then that every case

EXHIBIT 3

1    that is joined should always be tried together?  I mean

2    --

3         **MR. TANNER:**  Well, I'm trying to understand

4    whatever the plaintiffs are proposing?

5         **THE COURT:**  Are you saying then whenever joinder

6    is allowed we should always try the cases together and

7    not separate trials?

8         **MR. TANNER:**  Again, it's what -- I want to know

9    what they're gonna walk through the door with, Your

10   Honor. If they're --

11        **MR. KRUSE:**  Well, defendant's position is --

12        **THE COURT:**  Hold on, one at a time.

13        **MR. TANNER:**  If I might finish.  What I don't want

14   to do is get whip-sawed here, Your Honor, where right now

15   they stay well we might try 'em separately, it's up to

16   Your Honor.  We propose they could be together, but Your

17   Honor may change and then later say, well, they should

18   all be tried together.  I mean, it seems like for one

19   motion they're saying -- excuse me, to oppose this they

20   might say, well, we might have to try them separately and

21   then we hear a year down the road, well, we have to try

22   them all together.  I'd kind of like to know what they're

23   proposing right now.

24        **MR. KRUSE:**  We'd be happy to tell you what we're

25   going to propose right now, but it's not --

EXHIBIT 3

1    **MR. TANNER:**  Well, what is it?

2    **MR. KRUSE:**  It depends on what we agreed as far as

3    what's appropriate on discovery.

4    **MR. NIEMEYER:**  Well, let's --

5    **THE COURT:**  Okay.  Hold on.  So I think we've gone

6    far field from where we need to be arguing these motions.

7    I think that's something to be taken up if and when I

8    give out a ruling that does not sever these.  Then we can

9    figure out how we're going to take up the trial.  But I

10   think for this argument, we don't need to go down to step

11   2 quite yet.

12   **MR. KRUSE:**  And I would respond to the defendant's

13   position in that all the plaintiffs are proposing is what

14   is specifically allowed by the Missouri rules on joinder.

15   **THE COURT:**  Say that again.

16   **MR. KRUSE:**  All we are proposing is what is

17   specifically allowed by the Missouri rules on joinder.

18   The policy behind joinder isn't necessarily to dictate

19   that all the cases must be tried together.  The rule as

20   written specifically understood that some situations may

21   arise such as the present where joinder serves some

22   purpose.  We have a host of claims that involve common

23   questions of law and fact.  There is some benefit to both

24   all the plaintiffs, the defendants and the Court as far

25   as judicial economy goes by treating these cases together

EXHIBIT 3

1    as one case that are joined together.  These plaintiffs,

2    they have common issues.  The method -- the design of the

3    product, the design defect, what the defendants knew,

4    what they failed to disclose.  Those are common questions

5    that apply to all cases.  The same discovery is going to

6    apply across each plaintiff on the complaint.  That is

7    one of the purposes expressly served by joinder.  The

8    joinder rule isn't specifically designed only to have

9    massive trials of all cases that are joined together.

10   Joinder allows these common questions that are directly

11   before the Court right now to achieve some judicial

12   economy in answering those questions.  That is all we're

13   asking the Court to do.

14        Now, whether the Court finds it appropriate to

15   ultimately try the cases separately or try them together.

16   That's not a question that has to be answered today, and

17   that's not a question that is determinative in the

18   propriety of the severance argument.

19        **THE COURT:**  Okay.  All right.  So we'll take it as

20   heard and submitted.  I will get out a judgment on this

21   as fast as I can to allow you guys to have productive

22   discussion.

23        **MR. NIEMEYER:**  Thank you, Your Honor.

24        **THE COURT:**  In the meantime try to have as many

25   discussions, whether they're productive or not, as

EXHIBIT 3

```
 1    possible.  Anything we didn't cover?
 2           MR. CHILDRESS:  A reply --
 3           THE COURT:  Oh, yeah, you want a week -- I'm
 4    sorry, good point.  I knew there was something else.  So
 5    you're going to have a week to get a reply to the last
 6    thing they filed.
 7           MR. TANNER:  Yes, sir.
 8           THE COURT:  Okay.  Very good.  That will conclude
 9    the record.
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

EXHIBIT 3

CERTIFICATE

I, Laurie A. Bennett, Certified Court Reporter, do hereby certify that I am an Official Court Reporter for the Circuit Court of the City of St. Louis; that on December 15, 2016, I was present and reported all the proceedings had in the case of ANTHONY HALINSKI, et al, Plaintiffs vs. COOK GROUP INC,. et al Defendants, Cause No. 1622-CC00366., **AND** KENYON ALLEN COLLINS, et al. Plaintiffs, vs. COOK GROUP, INC., et al., Defendants, Cause No.  1622-CC00337.

I further certify that the foregoing 37 pages contain a true and accurate reproduction of the proceedings.

/s/ Laurie A. Bennett

_____

LAURIE A. BENNETT CCR #407

EXHIBIT 3